452 F.2d 510
 Fed. Sec. L. Rep. P 92,971
 Irving GOTTLIEB et al.,
v.
SANDIA AMERICAN CORPORATION (formerly known as Sandia
American Development Corporation), Appellant in 18400 and
18956, and Sigmund Goldblatt, Bernard L. Frishman, Pauline
I. Wechsler, Dr. Herbert Wechsler, Joseph L. Nellis, Wallace
Agnew, James Roosevelt, individualy and as the officers and
directors of Sandia American Corporation (formerly known as
Sandia American Development Corporation), and Nathan
Wechsler, individually and as agent for Sandia American
Corporation (formerly known as Sandia American Development
Corporation).
Appeal of Nathan WECHSLER, Individually and as Agent for
Sandia American Corporation, in Nos. 18530 and 18957.
 Nos. 18400, 18530 and 18956-18957.
 
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 26, 1971.
Decided March 15, 1971.
Rehearing Denied April 15, 1971.
Certiorari Denied Nov. 9, 1971.
See 92 S.Ct. 274.
 Pace Reich, Modell, Pincus, Hahn & Reich, Philadelphia, Pa., for appellants.
 William R. Pomerantz, Philadelphia, Pa., for appellees.
 Before HASTIE, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 The corporate and individual appellants challenge the civil judgment of the district court, sitting without a jury, awarding damages for violations of Rule 10b-5, 17 C.F.R. Sec. 240.10b-5 and the Securities Exchange Act, 15 U.S.C. Sec. 78j(b). They contend that the complaint against Sandia American Corporation should have been dismissed for want of in personam jurisdiction, and that the lower court erred both in finding a violation of the regulation or statute and in calculating the resultant damages.
 
 
 2
 The United States Marshal served copies of the summons and complaint upon the individual defendant, but made a return of "not found" as to the corporation.[1] An answer filed in behalf of all defendants set forth the defense of lack of service as to the corporation. At a hearing on this issue, the court ordered additional time in which to perfect service on the corporate defendant, but the plaintiffs did not attempt a second service. Instead they rested on the contention that service on the individual defendant, Nathan Wechsler, also constituted valid service on the corporation. They emphasized that although Wechsler was not an officer or director of the corporation, he was a controlling stockholder, and that the written agreement covering the transactions which generated the present litigation listed Wechsler's office address as the place to which notices to the corporation should be sent:
 
 
 3
 Luke C. MooreUnited States Marshal.
 
 
 4
 By /s/ William H. BeckerDeputy.
 
 
 5
 Luke C. MooreUnited States Marshal.
 
 
 6
 By /s/ William H. BeckerDeputy.
 
 
 7
 Notices. All notices, requests, demands and other communications hereunder shall be in writing, and shall be deemed to have been duly given if delivered or mailed, * * * to the purchaser [Sandia American] at 1420 K St., N.W., Washington, 5, D.C.
 
 
 8
 At a second hearing on the motion to dismiss for insufficient service, the district court ruled that there had been valid service upon the corporation. It reasoned that service on Wechsler amounted to service on the corporation because (a) Wechsler had been the "negotiating agent for the defendant corporation" in the business transaction, (b) his address was the same as that specified in the agreement for sending notices to the corporation, and (c) "there were sufficient contacts on the part of the parties to this transaction to confer jurisdiction on this Court."
 
 
 9
 We disagree with this analysis and result. It is necessary to emphasize that the issue here is not one of constitutional due process, but one of compliance with the Federal Rules of Civil Procedure. Therefore, the question of "sufficient contacts" is simply not relevant. For the corporate service to be valid, it must qualify in theory and in fact under Rule 4(d) (3):
 
 Service shall be made as follows:
 
 10
 Upon a domestic * * * corporation * * * by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *.
 
 
 11
 Because Wechsler was not an officer or an agent authorized by appointment or by law to receive service of process, the plaintiffs had the burden of proving that his position was that of "managing or general agent."[2]
 
 
 12
 The determination whether an individual is "a managing or general agent" depends on a factual analysis of that person's authority within the organization. 2 Moore's Federal Practice p 4.22. One occuping this position typically will perform duties which are "sufficiently necessary" to the corporation's operations. Goldberg v. Mutual Readers League, Inc., 195 F.Supp. 778, 783 (E.D.Pa.1961). He should be "a responsible party in charge of any substantial phase" of the corporation's activity, Remington Rand, Inc. v. Knapp-Monarch Co., 139 F.Supp. 613, 621 (E.D.Pa.1956); Lone Star Package Car Co. v. Baltimore & Ohio R.R., 212 F.2d 147, 152 (5 Cir. 1954). In brief, it is reasonable to expect that such an agent will have broad executive responsibilities and that his relationship will reflect a degree of continuity. See Aquascutum of London, Inc. v. S. S. American Champion, 426 F.2d 205 (2 Cir. 1970); see also Young v. Albert Pick Hotels, 126 U.S.App.D.C. 155, 375 F.2d 331 (1967). Authority to act as agent sporadically or in a single transaction ordinarily does not satisfy this provision of the Rule. Zhemeck v. J. H. Winchester & Co., 23 F.R.D. 8 (E.D.Pa.1958). Holland v. Parry Navigation Co., 7 F.R.D. 471 (E.D.Pa.1947).
 
 
 13
 The district court characterized Wechsler as a "transactional agent" instead of the "managing or general agent," and our independent examination of the record does not persuade us that Wechsler was shown to occupy the status designated by Rule 4(d) (3). Indeed, plaintiffs offered no testimony to support the validity of the service. Thus, the record before us is limited to the pleadings which constituted the sole record before the district court at the time the issue was decided.[3] Those pleadings show that the agreement between the parties was signed by the president and the secretary of Sandia American and not by Wechsler. The complaint did not aver that Wechsler was a managing or general agent, but simply "an agent for SANDIA and authorized by SANDIA to negotiate the acquisition of WORLD WIDE." The defendants' answer denied that Wechsler "was anything but tax counsel in negotiating the exchange of the stock."
 
 
 14
 The transfiguration of service on Wechsler into a valid service on the corporation is made even more difficult by the facts reported on the marshal's return. Wechsler was not served as an agent of the corporation, but as an individual defendant.[4] Moreoever, the summons and complaint to be served on the corporation were returned "not found" by the marshal, even though an attempt to find an officer or agent was made at Wechsler's office. What the marshal reports as "not found," no court may, without evidentiary or legal support, "find."[5]
 
 
 15
 A duly organized business corporation enjoys an identity separate and apart from its stockholders, directors, and officers. Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727 (3d Cir. 1970). The law's recognition of this separate identity is the very concept which has stimulated and encouraged the development and proliferation of corporations in the business community. Historically, a corporation was held incapable of legal "existence" outside the state whose laws chartered it. The modern view is that a corporation "exists" anywhere it is doing business and that it may there be amendable to valid service.[6] But to say that a corporation may be served wherever it is doing business is not to conclude that service on any corporate personnel is of itself valid service on the corporation. The applicable Federal Rule provides that valid corporate service can be effected only if certain designated personnel are served, viz, an officer or qualified agent thereof.
 
 
 16
 Moreover, the Rules distinguish between service of one in his individual capacity, Rule 4(d) (1), and service of one as a representative of a corporation 4(d) (3). An individual may be served "personally or by leaving copies [of the summons and complaint] at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." But there is no provision under Rule 4(d) (3) for substituted service on the corporation's representative. Copies of the summons and complaint must be delivered to the officer or agent.[7]
 
 
 17
 To prove valid service, it was incumbent upon plaintiffs to show that Wechsler was a managing or general agent for the corporation and that he was served in a representative rather than individual capacity. They have failed on both counts in carrying their burden of proof. It appearing that the corporate appellant was not properly served, that it did not submit to the court's jurisdiction by an affirmative act of submission or by conduct, Fed.R.Civ.Pro. 12(h), and that it timely asserted a challenge to jurisdiction of the court over its person first by answer and then by motion under Fed.R.Civ.Pro. 12(b), we hold that the complaint against it should have been dismissed.
 
 
 18
 The correctness of the judgment against the individual appellant turns on the validity of the district court's finding of a violation of Section (b) of Rule 10b-5, 17 C.F.R. Sec. 240.10b-5:
 
 
 19
 It shall be unlawful for any person * * * (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. * * *
 
 
 20
 The court found a misstatement or omission of material fact in a December 31, 1961, consolidated financial statement of Sandia American Corporation. The corporation, principally through Wechsler, acquired assets of World Wide Corporation in exchange for Sandia American stock. Plaintiff-appellees, formerly stock and debenture holders of World Wide, alleged that Sandia American's execution of $784,000 in promissory notes to a third corporation was not reflected in the financial statement or otherwise communicated to them prior to consummation of the agreement, and that there was, therefore, a misrepresentation of the true value of the Sandia American's stock at the time they agreed to take it in exchange for their World Wide holdings.
 
 
 21
 The defense responded that this particular obligation was not Sandia American's, but that of subsidiary corporations. The short answer to this is that the December 31, 1961, statement purported to be a consolidated financial statement of the subsidiary as well as parent corporations.[8] Because the combined assets were listed, it follows that combined liabilities should also have been disclosed.
 
 
 22
 The second prong of the defense argument is that there was no showing by plaintiffs that they relied on the financial statement. We find a sufficient nexus between the misstatement and the purchase to meet the statutory test of the Securities and Exchange Act, 15 U.S.C. Sec. 78j(b):
 
 
 23
 It shall be unlawful for any person * * * (b) to use or employ, in connection with the purchase or sale of any security * * * any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.[9]
 
 
 24
 The test is satisfied "whenever a device was employed 'of a sort that would cause reasonable investors to rely thereon, and, in connection therewith, so relying, cause them to purchase or sell a corporation's securities,' SEC v. Texas Gulf Sulphur Co. [401 F.2d 833, 860 (2 Cir. 1968)]." Heit v. Weitzen, 402 F.2d 909, 913 (2 Cir. 1968). See City National Bank of Fort Smith, Ark. v. Vanderboom, 422 F.2d 221, 229 (8 Cir. 1970); SEC v. North American Research & Development Corp., 424 F.2d 63, 82 (2 Cir. 1970); Royal Air Properties, Inc. v. Smith, 312 F.2d 210, 212 (9 Cir. 1962).
 
 
 25
 Moreover, liability is not limited to the corporation but extends also to any person associated with the corporation who withholds material information concerning the value of the corporation's stock. 15 U.S.C. Sec. 78j(b); 17 C.F.R. Sec. 240.10b-5. Appellant Wechsler was the negotiating agent for Sandia American in the transaction with the plaintiffs. He was the senior partner of the accounting firm which prepared the consolidated financial statement of Sandia American and subsidiary companies, the controlling stockholder of the parent corporation, and a partner in Star Associates, the operating company for Sandia American's subsidiaries. His actions clearly came within the pale of the regulation and the statute.
 
 
 26
 Both parties to this appeal object to the award of $50,000.00 damages. Because appellees did not lodge a cross-appeal, their argument as to insufficiency will not be considered. We have concluded that the district court gave full and proper consideration to the damage issue. Recognizing the complexity of this issue, the court appointed a special master who fashioned a formula of compensation. Although the question of proper damages is not free from difficulties, we believe that the court did not err. See J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).
 
 
 27
 The judgment against Sandia American Corporation will be reversed and the complaint against it dismissed. The judgment against the individual appellant will be affirmed.
 
 
 
 [1]
 The returns of the marshal as to appellant Nathan Wechsler and the corporate defendant, Sandia American:
 I hereby certify and return that I served the annexed Summons-Complaint(Writ) on the therein-named Nathan Wechsler(Individual, company, corporation, etc.) by handing to and leaving a true and correct copy there of with him(Individual or agent of company, corporation, etc.) personally at 1420 K. St-NW(Address-Street number, apartment number, rural route, etc.) at Washington, D.C. (City) (State) in the said District at 1:00 p.m. on the 12 day of Aug. 1963.
 I hereby certify and return annexed Summons-Complaint(Writ) on the thereinnamed Sandia American Corp. (Individual, company, corporation, etc.) not to be found in my district-no agt or office at 1420 K. St-NW to serve(Individual or agent of company, corporation, etc.) at 1420 K. St-NW(Address-Street number, apartment number, rural route, etc.) at Washington, D.C. (City) (State) in the said District at 3:00 p.m., on the 6 day of Sept. 1963.
 
 
 [2]
 Wirtz v. Mercantile Stores Co., 271 F.Supp. 830 (E.D.Okl.1967); Dominguez v. National Airlines, Inc., 42 F.R.D. 35 (S.D.N.Y.1966). See Smeltzer v. Deere & Co., 252 F.Supp. 552 (W.D.Pa.1966); Rutter v. Louis Dreyfus Corp., 181 F.Supp. 531 (E.D.Pa.1960)
 
 
 [3]
 The service was held valid by a different member of the court than the judge who presided at trial
 
 
 [4]
 Significantly, plaintiffs have not challenged the integrity of the marshal's return on the theory that the marshal failed to follow directions to serve the corporation through its putative managing or general agent, Wechsler. Rather, they rely on the concept that service on Wechsler as an individual was also service on the corporation because he was, in fact, the corporate agent who negotiated their transaction
 
 
 [5]
 See Rutter v. Louis Dreyfus Corp., supra note 2: although a marshal's return is not conclusive on the question of service on an agent, it will stand in the absence of proof to the contrary. 181 F.Supp. at 533
 
 
 [6]
 Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)
 
 
 [7]
 Service under this part of the rule cannot be made, as it may be made on individuals pursuant to Rule 4(d) (1), by leaving a copy of the summons and complaint at the officer's or agent's dwelling house or usual place of abode with a person residing therein. And, generally speaking, the process cannot be left with someone at the officer's or agent's office
 
 
 [4]
 Wright & Miller, Federal Practice and Procedure, Civil, Sec. 1101 at 384 (1969)
 See Tyson v. Publishers Co., 223 F.Supp. 114, 115 (E.D.Pa.1963); Bard v. Bemidji Bottle Gas Co., 23 F.R.D. 299, 302 (D.Minn.1958); In re Eizen Furs, Inc., 10 F.R.D. 137 (E.D.Pa.1950).
 
 
 [8]
 Sandia American had entered into contractual obligations to purchase bowling centers from the third corporation on February 18 and March 15, 1961, wherein it obligated itself to substantial financial commitments. The agreement provided that Sandia American could set up subsidiaries which could execute promissory notes and that in case of default, the selling corporation would "hold Sandia harmless" and look only to the assets of the designated subsidiary. Sandia American set up a subsidiary in 1961 under the name Star Associates to purchase leaseholds for other subsidiaries of Sandia American and to assume obligations thereunder. As of December 31, 1961, the selling corporation had not accepted Star Associates on the notes executed pursuant to the February and March agreements, nor had it released Sandia American from liability under the agreements
 
 
 [9]
 Rule 10b-5, 17 C.F.R. Sec. 240.10b-5 provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.